### GOODALE *vs.* HIS CREDITORS.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF NEW-ORLEANS.

A creditor who has a special mortgage or the vendor's privilege, on certain property surrendered by his debtor, and at the sale by the syndics, bids for it and it is adjudicated to him, he cannot be required to pay the *price* of the adjudication, but may retain it in satisfaction of his claim, except so far as it exceeds the amount of his mortgage; on his giving security to refund or meet any charge, that may afterwards be legally ordered.

Mortgage creditors, are authorised to resist any attempt to sell the mortgaged property, otherwise, than for the immediate payment of the mortgaged debts.

The proceeds of the sale of mortgaged property, remains subject to the same rights and privileges, which the creditor had on it before the sale.

EASTERN DIST.
May, 1835.

GOODALE
vs.
HIS CREDITORS.

Syndics who have funds arising from the sale of the insolvent's property, are bound to distribute them without delay.

Where there are higher or concurrent mortgages or privileges, than that of the creditor to whom the mortgaged premises have been adjudicated, or where he is required to support a portion of the charges of the *cessio bonorum*, he cannot retain the *price* of the purchase, in satisfaction of his privileged claim.

This case commenced with a rule taken by the syndics of the creditors of N. Goodale, on L. G. Hilligsberg, to whom seven lots of ground, being part of the ceded property, were adjudicated at a public sale, for the price of eleven thousand eight hundred dollars, in cash, to show cause why he should not comply with the terms of sale and pay over the amount ; that he refuses to do so, although a bill of sale in due form of law has been made and tendered to him ; and that in default of payment, a writ of *distringas* shall issue against him to enforce a compliance.

The defendant on the rule, in answer thereto, stated that he was a mortgaged creditor, having sold the property now purchased by him, to the insolvent for the sum of sixteen thousand nine hundred and fifty dollars ; of which, two instalments of five thousand six hundred and fifty dollars each, are now due, which, together with interest thereon, amounts to eleven thousand six hundred and sixty-two dollars. Having retained a special mortgage with the vendor's privilege on said property, he avers he has the right to retain so much of the price of adjudication, in satisfaction of his claim, as will extinguish it, on his giving security, until it be shown by the tableau of distribution whether any other one has a better right to said property than himself.

He further avers that the excess of his purchase or price of adjudication over his claim is one hundred and thirty-eight dollars, which he tenders to the syndics, on receiving a deed of sale, and on the execution of which, he is willing to give them good personal security and a mortgage on the property.

On hearing the parties on this rule, the parish judge being satisfied that the grounds taken by the defendant therein, were fully sustained by the evidence ; ordered, that the rule

be discharged, and that the defendant be authorised to retain the price of adjudication to him, on his paying the excess and giving security to the syndics as he proposed ; and that they make him a title to the property.    The syndics appealed.

*Strawbridge,* for the appellants.

*D. Seghers, contrà.*

*Martin, J.,* delivered the opinion of the court.

This case grows out of the proceedings in disposing of the property of the insolvent.    The syndics are appellants from the decision and order of the parish judge, in discharging a rule which they had taken on L. G. Hilligsberg, to whom certain lots (part of the ceded property) had been adjudicated, to show cause why he should not pay the price of adjudication, or on his failing to do so, a *distringas* should not issue against him.    They have also appealed from an order of court, directing them to convey the premises to the defendant, in this rule, on his paying to them the sum of one hundred and thirty-eight dollars, and giving them personal security and a special mortgage on the premises for the payment of the whole, or such part of his claim as might be disallowed ; or for such a part of the costs and charges of the failure as he may be liable to pay, on the final adjustment of its concerns.

It appears from the facts of the case that Hilligsberg was the original vendor of the premises in contest to the insolvent ; and that he had retained thereon a special mortgage and privilege to secure the sum of eleven thousand six hundred and forty-two dollars, and that he provoked a sale of them, and they were adjudicated to him for eleven thousand eight hundred dollars.    He immediately tendered the sum of one hundred and thirty-eight dollars, which was the difference between the price or two sums for which he had sold and repurchased the same property.    He also tendered personal security, together with a special mortgage on the premises in the manner ordered by the judge as above stated.

The counsel for the syndics of the insolvent has not denied the nature and amount of Hilligsberg's claim, but he has contended that the latter is bound by his purchase to pay the amount of the adjudication into the hands of the syndics, where it must remain until a distribution of it, with the other funds, among the creditors, on a tableau filed and order of the court thereon.

The counsel on the other side, contends that a creditor, who by his contract has secured to himself the pledge of real property, to secure his debt, cannot legally be deprived of it by legislative enactment; and that the court is bound to construe any act in which the destruction of such a pledge is claimed to the inquiry of the creditor, so as to prevent its impairing the obligation of the contract.

A creditor who has a special mortgage or the vendor's privilege, on certain property surrendered by his debtor, and *at* the sale by the syndics, bids for it and it is adjudicated to him, he cannot be required to pay the *price* of the adjudication, but may retain it in satisfaction of his claim, except so far as it exceeds the amount of his mortgage, on his giving security to refund or meet any charge that may afterwards be legally ordered.

The only question presented for the solution and decision of the court is, whether the special mortgage, together with the vendor's privilege, when the vendor has provoked the sale of the premises after the failure of his vendee, and when they have been adjudicated to him at the sale, may retain the price of the adjudication, on his offering sufficent security to refund in case he is, on the final decision of the matter, required by law to refund.

The law abhors waste, even waste of time, or useless delay. It favors the loan of money on landed security without the additional burden of an endorsement. On the representations of some of our banking institutions, that the interest of mortgaged creditors may be jeopardized by an erroneous construction of the laws relating to a surrender of the mortgaged property, the legislature has protected them by an exemption from the common danger they apprehended.

Mortgage creditors are authorised to resist any attempt to sell the mortgaged property, otherwise than for the immediate payment of the mortgaged debt. 2 *Moreau's Digest,* 429.

Mortgage creditors are authorised to resist any attempt to sell the mortgaged property, otherwise than for the immediate payment of the mortgaged debts.

The proceeds of the sale of mortgaged property remain subject to the same rights and privileges which the creditor had on it before the sale. *Ibid.,* 433. When syndics have funds in their hands arising from the sale of the effects of the insolvent, they are bound to distribute them

*without delay. Ibid.*, 433, *section* 33. *Lex neminem cogit ad vana.* In vain would the syndics require the mortgage creditor who has provoked the sale of the premises for his immediate payment, and to whom they have been adjudicated to make payment, except for so much of the price of adjudication as exceeds his legal claim. The syndics, were they to receive it, would be bound to distribute it *without delay.* The mortgagee would have, as the law expressly says, the same right and privilege on the price or proceeds, which he had before the sale on the land itself; *i. e.* the right of being paid by preference out of these funds.

The proceeds of the sale of mortgaged property remains subject to the same rights and privileges which the creditor had on it before the sale.

Payment to the syndics in most cases, would be injurious to the mass of the creditors whose interests they are bound to protect, by the accumulation of useless interest.

Syndics, who have funds arising from the sale of the insolvent's property, are bound to distribute them without delay.

Two circumstances, however, may authorise the syndics to resist the pretensions of the mortgage creditors to retain the amount of their purchases. *First,* the existence of higher or concurrent mortgages or privileges. *Secondly,* the obligation of the mortgagee to support a portion of the charges of the *cessio bonorum.* The existence of other mortgages or privileges is a matter susceptible of easy proof. *De non apparentibus et non existentibus eadem est lex.*

Where there are higher or concurrent mortgages or privileges, than that of the creditor to whom the mortgaged premises have been adjudicated, or where he is required to support a portion of the charges of the *cessio bonorum,* he cannot retain the *price* of his purchase in satisfaction of his privileged claim.

The liability of the mortgagee to suffer a deduction of his claim and to support a part of the charges of the *cessio bonorum,* is a matter which is susceptible of being approximatively ascertained.

In the present case, the existence of higher or concurrent mortgages or privileges is not pretended or shown, nor is the liability of the mortgagee to support any portion of the charges of the *cessio bonorum,* urged as being in any degree probable. It is true, the several creditors of the insolvent have the undoubted right, individually or otherwise, to oppose the claim of any other creditor as regards its nature and extent.

But the syndics represent them all, and it is not to be expected, that they would wrongfully neglect to urge any legal means of resistance or defence of their rights and interests which might be known to them.

Certain and absolute claims must be paid.   Qualified, conditional or contingent ones, cannot be discharged, until they are liquidated and decided to be just and legal; and in the meantime they have the right of demanding protection and security.   If the qualification, condition or contingency relates not to the *nature* but to the *quantum* of the claim, the court may order the deposit of an approximate sum.

In the present case, there is not even a suggestion of any higher or concurrent privileged claim in relation to the property purchased, nor any probability of any liability to a deduction for charges attending the property surrendered. The judge *a quo*, has secured the rights of individual creditors against being concluded by the acts of the syndics, by requiring from the purchasing creditor, both personal security and a mortgage.   He has in our opinion, discreetly exercised a legitimate power, by refusing to subject the creditor to a destruction of his lien on the proceeds of the sale of the mortgaged premises.

The right of a mortgaged creditor to be protected in the preservation of his pledge, according to the terms of his contract, ·is one of those natural rights and inestimable privileges which have been considered of such high importance, as to be secured by a constitutional provision, even against the errors of legislation.   This imposes on the the judiciary the obligation and duty of avoiding any enterpretation of the laws which may endanger those rights.

When we consider that syndics give no security; that they are frequently appointed by the votes of chirographary creditors, who have often an interest directly opposed to mortgage creditors; that an insolvent who *is tutor to a* minor, to whom he owes, or appears to owe more than to his other creditors may, by his single vote appoint himself their syndic, (as is said to have been the case in an insolvency happening in the parish of Lafayette,) and as such, release every conventional mortgage he may have given, every judicial one his creditors may have obtained, and the legal privileges and mortgages which the law has provided for the security and protection of the wife and minor children; and

Eastern Dist.
May, 1835.

in this way leave all of them with no other security than the personal responsibility of the syndic, the insolvent debtor himself. Nor is this all: the insolvent thus made syndic, whose duty it is to administer, receive and pay over the funds of the estate to the creditors, is one to whom our law attaches the presumption of being a *fraudulent debtor!* Courts of justice must, therefore, feel bound to guard the rights of mortgage creditors, and to save and avoid their utter destruction by too rigid an adherence to the letter of the law.

It is, therefore, ordered, adjudged· and decreed, that the judgment of the Parish Court be affirmed, at the costs of estate surrendered.